NOT FOR PUBLICATION
## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TAYLOR, | : | |
| | : | |
| Plaintiff, | : | Civil Case No. 07-4059 (FSH) |
| | : | |
| v. | : | **ORDER and OPINION** |
| | : | |
| JVC AMERICAS CORP., | : | Date: May 29, 2008 |
| | : | |
| Defendant. | : | |

**HOCHBERG, District Judge**

This matter is before the Court upon Defendant JVC Americas Corp.'s ("JVC") Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). JVC is a Delaware corporation with its corporate headquarters in New Jersey. Compl. ¶ 5. Plaintiff is a resident of Jefferson County, Kentucky. Compl. ¶ 4. The Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332. The Court has considered the arguments of the parties pursuant to Federal Rule of Civil Procedure 78.

### I. FACTS

"1080p" televisions and monitors have a native resolution of 1920 x 1080 and display using a progressive scan. Compl. ¶ 17. This 1920 x 1080 resolution provides greater detail in the displayed image than a television with lesser resolution. Compl. ¶ 10. Plaintiff's complaint describes how 1080p televisions can improve upon lower-resolution displays in one of two ways: either by "up-converting" lower resolution signals to 1080p or by displaying "native" 1080p signals at 1080p. Plaintiff alleges that up-converting "can result in some minor improvements in the image, but it does not make the nature image any sharper because resolution can never be

improved." Compl. ¶ 18. Plaintiff's complaint suggests that the real benefit of a 1080p television is its ability to display higher-resolution native 1080p signals.

The complaint alleges that: When 1080p televisions and monitors were first put on the market in 2005, there were no native 1080p signals available. Compl. ¶ 17. Television broadcasters in the United States were then, and are still, transmitting High-Definition television ("HDTV") only in lower 720p or 1080i resolution. Id. At the time that 1080p televisions and monitors were first introduced, two consortiums were making final preparations to introduce sources capable of providing native 1080p signals. Compl. ¶ 19. In July and August of 2005, the consortiums introduced two competing technologies – High Definition DVD ("HD-DVD") and Blu-ray Disc ("Blu-Ray"). Id. Both products output 1080p signals via High-Definition Multimedia Interface ("HDMI"). Compl. ¶ 19-20. Plaintiff alleges that both consortiums worked closely with "all major consumer electronics manufacturers including JVC" to develop the standards and technologies for their native 1080p sources. Compl. ¶ 20.

In November 2006 Plaintiff purchased a JVC LT-46FN97 1080p television at an H.H. Gregg Appliances store in Jefferson County, Kentucky. Compl. ¶ 31. Plaintiff alleges that he sought a top of line television capable of accepting 1080p signals and paid between $1,000 and $1,500 more for the JVC LT-46FN97 1080p television than he would have for a comparable high definition television that was not marketed as 1080p. Compl. ¶ 32-33.

Although JVC marketed its LT-46FN97 television as "1080p", and although Plaintiff's television has an HDMI input, Plaintiff avers that his television will not accept a native 1080p signal from the HDMI input. Compl. ¶ 21. Plaintiff alleges that until the summer of 2006, none of the 1080p televisions sold by JVC were capable of accepting a 1080p signal via the HDMI

input. Compl. ¶ 22. Plaintiff alleges that, despite knowing that its 1080p televisions were incapable of accepting 1080p signals from any available source, JVC failed to fully disclose this fact to consumers. Compl. ¶ 23. Plaintiff alleges that JVC's advertising and marketing materials encouraged consumers to purchase its 1080p televisions in large part to be prepared for the imminent availability of 1080p sources, in spite of the fact that JVC knew that these televisions were incapable of receiving 1080p signals from any sources of native 1080p available at the time or in the foreseeable future. Compl. ¶ 30. According to Plaintiff, a reasonable consumer would have no reason to suspect that a television labeled "1080p" and priced significantly above high definition televisions marketed only as "HDTV" would be incapable of receiving a 1080p signal from any device capable of delivering a native 1080p signal. Compl. ¶ 29.

Plaintiff states that at the time he purchased his 1080p television, he did not know that the JVC LT-46FN97 1080p television was incapable of accepting a 1080p signal from any of the native 1080p sources then available. Compl. ¶ 37. It was not until "several months" after his purchase that Plaintiff realized his 1080p television was incapable of receiving a 1080p signal. Compl. ¶ 35. Plaintiff filed suit on August 23, 2007, alleging Unjust Enrichment (Compl. ¶ 47), Fraudulent Concealment (Compl. ¶ 52), Breach of Express Warranty (Compl. ¶ 60), Breach of Implied Warranty (Compl. ¶ 64), and violations of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-2 (Compl. ¶ 69). Defendant filed the instant motion to dismiss on November 7, 2007.

## II. STANDARD

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim result in a determination on the merits at an early stage of a plaintiff's case. See Mortensen

v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  As a result, "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn."  Id.  In order to survive a 12(b)(6) motion to dismiss, "[t]he plaintiff must allege facts sufficiently detailed to 'raise a right to relief above the speculative level,' and must 'state a claim to relief that is plausible on its face.'"  Pronational Ins. Co. v. Shah, No. 07-1774, 2007 WL 2713243, *1 (E.D. Pa. Sept. 17, 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)).  As the Third Circuit has recently stated:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (internal citation omitted, alteration in original) (quoting Twombly, 127 S. Ct. at 1965).

### III. DISCUSSION

*A. Choice of Law*

New Jersey is the "forum state" for the instant litigation, and the Court "must apply the law of the forum state, including its choice of law rules."  Barbey v. Unisys Corp., No. 06-2849, 2007 WL 4219470, *1 (3rd Cir. Nov. 30, 2007) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)).  New Jersey "currently subscribe[s] to the more flexible governmental-interests analysis."  Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767, 771 (N.J. 2007).  The governmental interest approach requires a two-step analysis:

> "The first step in the analysis is to determine whether a conflict exists between the laws of the interested states. Any such conflict is to be determined on an issue-by-

4

> issue basis." If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue.
>
> If there is an actual conflict, the second step "seeks to determine the interest that each state has in resolving the specific issue in dispute." The Court must "identify the governmental policies underlying the law of each state" and determine whether "those policies are affected by each state's contacts to the litigation and to the parties." We must apply the law of "the state with the greatest interest in governing the particular issue."

Id. at 771 (internal citations omitted) (quoting Veazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986)).

Plaintiff's claims can be categorized into two groups: those that sound in contract or quasi-contract[1] and those that sound in fraud.[2] The two categories will require the Court to undertake slightly different choice-of-law analyses. For Plaintiff's contract claims, the Court considers the factors described in the Restatement (Second) of Conflict of Laws § 188. See CSR Ltd. v. Cigna Corp., No. 95-2547, 2005 WL 3132188, *13 (D.N.J. Nov. 21, 2005) ("In so doing, the New Jersey Supreme Court requires that courts consider the guidance of the Restatement."). As one court has explained:

> In the context of contract matters, the Restatement provides that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied" unless the principles stated in § 6 dictate a different result. Section 188 offers various contacts for courts to consider in applying the principles of § 6 to contract issues, including: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." "These contacts are to be evaluated according to their relative

---

[1] See Compl. Counts I (unjust enrichment), III (breach of express warranty), IV (breach of implied warranty), V (violation of New Jersey Consumer Fraud Act).

[2] See Compl. Count II (fraudulent concealment).

importance with respect to the particular issue."

Id. at *13 (internal citations omitted) (citing Gilbert Spruance Co. v. Pa. Mfrs.' Assoc. Ins. Co., 629 A.2d 885, 888 (N.J. 1993)).

For tort claims, the Restatement lists several relevant factors to determine which state has the most significant relationship to the occurrence and the parties.

> The factors are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." The most important of those is the competing interests of the states. As discussed in Fu, the initial focus "should be on 'what [policies] the legislature or court intended to protect by having that law apply to wholly domestic concerns, and then, whether these concerns will be furthered by applying that law to the multi-state situation.'"

Erny v. Estate of Merola, 792 A.2d 1208, 1217 (N.J. 2002) (internal citations omitted) (quoting Fu v. Fu, 733 A.2d 1133, 1142 (N.J. 1999)).  In tort claims that sound in fraud, New Jersey courts look to the additional factors enumerated in the Restatement:

> The Restatement [(Second) Conflict of Laws § 148(2)(a)-(f)] enumerates six contacts[:]
>
> (a) the place . . . where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the . . . place of incorporation and place of business of the parties . . . (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Pratt v. Panasonic Consumer Electronics Co., 2006 WL 1933660, 12 (N.J. Super. Ct. Law Div. July 12, 2006) (internal citations omitted).

*B. New Jersey Consumer Fraud Act Claim*

Defendant moves to dismiss Count V of Plaintiff's complaint brought under New Jersey's Consumer Fraud Act (CFA), N.J. STAT. ANN. § 56:8-2.  Given Plaintiff's limited contacts with the state of New Jersey, there is a serious threshold choice-of-law question as to whether this Court may apply the New Jersey CFA to the transaction at issue.  This serious question notwithstanding, neither party has briefed the first step in the choice of law analysis; that is, whether there is a conflict between the consumer protection statutes of New Jersey and Kentucky.[3]  See Rowe, 917 A.2d at 771.  The Court is mindful that "[a] court adjudicating a CFA claim must approach dismissal of said claim 'with hesitation.'"  Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, *2 (D.N.J. Jan. 14, 2008) (quoting New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003)).  Because the parties have failed to address the first step of the Court's choice-of-law analysis, the Court will deny Defendants' motion to dismiss Plaintiff's CFA claim with leave to Defendant to renew the argument at the summary judgment stage, with proper briefing of choice of law issues at that time.

*C. Fraudulent Concealment Claim*

Defendant also moves to dismiss Plaintiff's fraudulent concealment claim under Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must

---

[3]     The parties' failure to brief this critical issue is sufficient to deny Defendant's motion to dismiss.  There is, however, an additional reason: assuming that the statutes differ, the second step of the Court's choice-of-law analysis is fact-dependant and, at least in this case, not amenable to decision on a motion to dismiss.  See Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007).  As discussed in part III.D, infra, the resolution of this issue will require a factual record that is not presently before the Court.  This issue is therefore better suited to resolution at the summary judgment stage.

state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Defendant argues that under either New Jersey or Kentucky law, Plaintiff has failed to meet Rule 9(b)'s heightened standard. Federal Rule of Civil Procedure Rule 9(b) is, of course, a federal rule that applies in both Kentucky and New Jersey. Because the states' fraudulent concealment laws do not differ in any way that would impact the application of Rule 9(b), the Court need not undertake a detailed choice-of-law analysis on this issue.[4]

Defendant argues that Plaintiff has not pled sufficient facts to support his claim that JVC failed to disclose a material fact about the television at issue. Nevertheless, regardless of whether Plaintiff saw or relied upon certain advertising and marketing materials for the television model in question,[5] Plaintiff's complaint is fairly read to suggest that the fraudulent omission arises

---

[4] Under Kentucky law,

> [t]o prevail on a claim of fraud by omission, or fraud based on failure to disclose a material fact, a plaintiff must prove: a) that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and (d) that the plaintiff suffered actual damages.

Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). Under New Jersey law,

> a plaintiff must prove that: (1) the defendant had a duty to disclose information to the plaintiff; (2) the information was material; (3) the plaintiff could not readily have learned of the information without the defendant disclosing it; (4) the defendant intentionally withheld, altered, or destroyed the information; and (5) the plaintiff suffered harm by relying on the non-disclosure.

Steele v. Depuy Orthopaedics, Inc., 295 F. Supp. 2d 439, 456 (D.N.J. 2003).

[5] Plaintiff's opposition papers state that "neither the complaint nor JVC alleges that this promotional brochure was ever seen by Taylor or any member of the putative class . . . ."

from the mere fact that Defendant sold the television as a "1080p" television.  In other words, Plaintiff sought to purchase a television that accepted a 1080p signal.  Defendant sold the model in question as a 1080p television, and Plaintiff relied on the representation – made on the television itself, or on the packaging material, for example – in making his purchase.  See Compl. ¶ 32 ("Plaintiff Taylor purchased the . . . high-definition television because he wanted a top of the line television capable of accepting 1080p signals.").  Plaintiff has therefore satisfied Rule 9(b)'s pleading standard as to this claim.  Defendant's motion to dismiss on this ground is denied.

*D. Express and Implied Warranty*

Defendant moves to dismiss Plaintiff's express warranty claims.  In both New Jersey and Kentucky, the statute governing express warranties is the same.  It states "[w]here the buyer has accepted goods and given notification . . . he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."  KY. REV. STAT. ANN. § 355.2-714(1); N.J. STAT. ANN. § 12A:2-714(1).  In both New Jersey and Kentucky:

> Express warranties by the seller are created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description

KY. REV. STAT. ANN. § 355.2-313(1); N.J. STAT. ANN. § 12A:2-313(1).  Plaintiff's express warranty claim is premised on the fact that the television model in question was sold by

---

Opp. at 2.

Defendant as a "1080p" television, but that the model did not accept a 1080p signal. Plaintiff alleges that the affirmations made by JVC on its packaging and promotional materials created an express warranty between JVC and Plaintiff. At this stage of the case, Plaintiff has sufficiently alleged that an express warranty was created and that it was breached when the model failed to accept a 1080p signal. See Compl. ¶¶ 61, 62.

Defendant also moves to dismiss Plaintiff's implied warranty claims. The implied warranty of merchantability is the same under both Kentucky and New Jersey law: "[g]oods to be merchantable must be at least such as . . . (c) are fit for the ordinary purposes for which such goods are used; and . . . (f) conform to the promises or affirmations of fact made on the container or label if any." KY. REV. STAT. ANN. § 355.2-314(2); N.J. STAT. ANN. § 12A:2-314(2). The implied warranty of fitness for a particular purpose is also the same in both New Jersey and Kentucky:

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose.

KY. REV. STAT. ANN. § 355.2-315; N.J. STAT. ANN. § 12A:2-315.

Defendant argues that Plaintiff failed to allege that he informed Defendant of his "particular use" and that this fact is grounds for dismissing Plaintiff's implied warranty claim. The UCC comments to the implied warranty for a particular purpose note that

> [w]hether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting. Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason

10

> to realize the purpose intended or that the reliance exists. The buyer, of course, must actually be relying on the seller.

UCC § 2-315 cmt. 1. Plaintiff has alleged that Defendant's representation that the televisions were "1080p" created an implied warranty that the televisions would accept a 1080p signal. See Compl. ¶¶ 61, 62, 65, 66. Plaintiff has stated a claim for breach of implied warranty and the remaining issues are issues of fact not amenable to resolution on a motion to dismiss.

Defendant next notes that under both Kentucky and New Jersey law, "[w]here a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ." KY. REV. STAT. ANN. § 355.2-607(3); N.J. STAT. ANN. § 12A:2-607(3). Plaintiff purchased the television in November 2006, and owned the television "for several months" before discovering that the television was incapable of accepting 1080p signals. See Compl. ¶ 35. Roughly nine months elapsed before Plaintiff filed suit on August 17, 2007. Defendant suggests that six months elapsed from the time Plaintiff discovered the alleged breach to his initiation of this litigation, implying that Plaintiff discovered the alleged breach sometime in February 2007. Defendant argues that this six-month delay in filing suit precludes Plaintiff's recovery under the UCC.

The Kentucky Supreme Court and New Jersey federal courts have held that UCC § 2-607(3)(a) does not require pre-litigation notice to a defendant.[6] See Strzakowlski v. General

---

[6] New Jersey state courts have yet to rule on this question. Nevertheless, another "Court [in this district] has previously predicted that the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a remote manufacturer who was not the immediate seller of a defective product." Strzakowlski, 2005 WL 2001912 at *3 (citing Cipollone v. Liggett Group, Inc., 683 F.Supp. 1487, 1498 (D.N.J. 1988) ("Alternatively, even if this provision required plaintiff to give notice to [defendant], plaintiff has presented evidence from which the jury could conclude that the filing of plaintiff's complaint constituted notice within a reasonable time.")).

Motors Corp., No. 04-4740, 2005 WL 2001912, *3 (D.N.J. Aug. 16, 2005) ("even if notice to [Defendant] is necessary under section 2-607(3)(a), the filing of Plaintiff's Complaint satisfied this requirement"); Mullins v. Wyatt, 887 S.W.2d 356, 358 (Ky. 1994) (because "there is simply an insufficient basis in text or in logic to require peremptory application of a pre-litigation notice rule . . . failure to give the notice is not fatal to a civil action for breach of warranty."). Moreover, the Kentucky Supreme Court and New Jersey federal courts have held that the "reasonable time" requirement is an issue for the fact finder and not an issue to be decided on a motion to dismiss. See Strzakowlski, 2005 WL 2001912 at *3 ("whether this notice-by-suit was provided within a reasonable time is a question for the fact finder. Therefore, the timing question is beyond the scope of a motion to dismiss for failure to state a claim."); Mullins, 887 S.W.2d at 358 (holding that "whether the litigation notice given here was 'within a reasonable time' should be determined as an issue of fact. Inasmuch as the reasonable time requirement is in derogation of an otherwise applicable statute of limitations, it should be determined upon equitable principles with [defendant] being required to show that the delay in giving him notice was unreasonable and prejudicial."). Consequently, Defendant's motion to dismiss on this ground is denied.

Finally, Defendant argues that Kentucky law should govern Plaintiff's claim and that under Kentucky law, Plaintiff's warranty claims are barred for lack of privity. See, e.g., Waterfill v. Nat'l Molding Corp., 215 Fed. App'x 402, 405 (6th Cir. 2007) ("Under [the Kentucky UCC], claims for breach of express or implied warranties may proceed only where there is privity between the parties."); Brown Sprinkler Corp. v. Plumbers Supply Co., No. 06-1667, 2007 WL 2744612, *3 (Ky. Ct. App. Sept. 21, 2007) ("a plaintiff-buyer asserting a claim based upon an

implied warranty must establish that it enjoyed privity of contract with the defendant-seller against whom the implied warranty claim is asserted."). By contrast, New Jersey law does not require privity in order for a plaintiff to state a claim for breach of warranty. See, e.g., Spring Motors Distributors, Inc. v. Ford Motor Co., 489 A.2d 660, 663 (N.J. 1985) ("We hold also that the buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied warranties.").

Under the first step of the Court's choice-of-law analysis, it is clear that the law of the forum state is in conflict with the law of Kentucky. Because there is an actual conflict in the states' laws, the Court must determine which state has the "greatest interest in governing the particular issue." Rowe, 917 A.2d at 771. Defendant notes that the television in question was purchased in Kentucky, by a Kentucky resident, from a Kentucky retailer, and suggests that New Jersey's relationship to the claim is "fortuitous." Plaintiff suggests several facts, however, that suggest more than a merely fortuitous relationship with the forum state.

The Court is unable to make the fact-intensive choice-of-law determination on the record before it. As the Third Circuit has noted, "[t]he [second step of the] governmental interest analysis is fact-intensive: 'Each choice-of-law case presents its own unique combination of facts – the parties' residence, the place and type of occurrence and the specific set of governmental interest – that influence the resolution of the choice-of-law issue presented.'" Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007) (quoting Erny v. Estate of Merola, 792 A.2d 1208, 1221 (N.J. 2002)). The choice-of-law decision that the Third Circuit affirmed in Warrnier was fact-intensive, and, consequently, the district court judge made his choice-of-law ruling at the summary judgment stage. Warriner v. Stanton, No. 03-2211, 2005 WL 1397015, *1 (D.N.J.

13

June 14, 2005).  Some choice of law issues may not require a full factual record and may be amenable to resolution on a motions to dismiss.  In this case, however, the Court will defer its choice-of-law decision until the parties present a factual record full enough to permit this Court to undertake the second step of the "governmental interest" analysis.  Defendant's motion to dismiss on this ground is denied.

*E. Unjust Enrichment*

Defendant moves to dismiss Plaintiff's unjust enrichment claim on grounds that, under either New Jersey or Kentucky law, an unjust enrichment claim may not be brought where a valid contract exists.  The issue of whether Plaintiff may simultaneously plead both contractual and quasi-contractual causes of action is governed by Federal Rule of Civil Procedure 8(e)(2).  Under the Federal Rules of Civil Procedure

> [a] party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

FED. R. CIV. PRO. 8(e)(2).  The state case law upon which Defendant relies is inapposite because state court pleadings are not governed by the standard set forth in Rule 8(e)(2).  Although it is an "uncontested truth that recovery under quasi-contractual or other equitable claims is precluded in the presence of a valid contract . . . [and] that some of plaintiff's quasi-contractual or other equitable claims may be dismissed as inconsistent at a later time in these proceedings, it is far to[o] early to do so now."  Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc., No. 05-

3362, 2006 WL 2788369, *5 (D.N.J. Sept. 27, 2006); see also In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996) (same).  The Court will deny as premature Defendant's motion to dismiss Plaintiff's unjust enrichment claim on this ground.

## IV. ORDER

**ACCORDINGLY IT IS** on this 29th day of May, 2008

**ORDERED** that Defendant's motion to dismiss (DKT#10) is **DENIED**.

/s/ Faith S. Hochberg
**HON. FAITH S. HOCHBERG, U.S.D.J.**